# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TORRENT PHARMA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-05-094 CEB |
| | ) | |
| PRIORITY HEALTHCARE | ) | |
| DISTRIBUTION,INC., d/b/a | ) | |
| CURASCRIPT SD SPECIALTY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DENALI OHIO SOUTHPARK | ) | |
| INDUSTRIAL LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  August 13, 2020
Decided:  October 15, 2020

## MEMORANDUM OPINION

*Defendant Denali Ohio Southpark Industrial LLC's
Motion for Summary Judgment.*
**DENIED**.
*Defendant Priority Healthcare Distribution, Inc's
Cross-Motion for Partial Summary Judgment.*
**DENIED**.

Michael B. McCauley, Esquire, PALMER BIEZUP & HENDERSON, LLP, Wilmington, Delaware.  Attorney for Plaintiff.

Elizabeth Sloan, Esquire and Brittany M. Giusani, Esquire, BALLARD SPAHR, Wilmington, Delaware.  Attorneys for Defendant Priority Healthcare Distribution, Inc., d/b/a Curascript SD Specialty.

Sarah B. Cole, Esquire, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Wilmington, Delaware.  Attorney for Denali Ohio Southpark Industrial LLC.

**BUTLER, J.**

## FACTS AND PROCEDURAL HISTORY

There is a warehouse in Grove City, Ohio. The warehouse is owned by Denali ("Landlord"). Denali leased the warehouse to CuraScript ("Tenant"). CuraScript had an arrangement with Torrent Pharma, Inc. ("Subtenant") to store Subtenant's pharmaceutical products in the warehouse. A sprinkler in the warehouse went haywire, flooding the warehouse and damaging the Subtenant's products to the tune of approximately $265,110. Subtenant has sued both the Tenant and the Landlord for its losses. As was probably inevitable, the Landlord and the Tenant have filed crossclaims against each other, each claiming indemnity from the other. Motions with respect to these crossclaims are what brings this matter before the Court for decision.

At the heart of the crossclaim dispute is the lease agreement between the Landlord and the Tenant. Specifically, the maintenance and repair clause in the Lease provides in pertinent part as follows:

> Tenant will at its sole expense maintain the Leased Premises in a first-class condition repair. Tenant's maintenance obligation will extend to and include the repair (but not the replacement) of all structural and non-structural elements and mechanical systems located within the Leased Premises.
> Landlord will maintain … all common areas serving the Building in a first-class condition and order of repair and will be responsible for replacing (but not repairing) all structural elements and mechanical systems located within the Leased Premises; provided, however, that Tenant (and not Landlord) will be required to maintain the same if the

1

need therefore arises due to the fault or negligence of Tenant or its agents, employees, licensees or invitees.

Essentially, the Tenant is responsible for routine maintenance and repairs but not replacements; Landlord is responsible for replacing mechanical systems, but not repairs. From what little we understand from the record thus far, the sprinkler system failed and dumped large amounts of water on the Subtenant's products. If the sprinklers are a "mechanical system" that needed to be replaced, it is the Landlord's problem under the lease. If the sprinkler issue was a mere "routine maintenance" and therefore a repair issue, it is the Tenant's problem.

The Landlord has moved for summary judgment. The Landlord's argument is that the repair provision relieves it of any obligations under the contractual language above, as does as a clause in the agreement that all property stored on the premises is at the Tenant's "sole risk."

Tenant has moved for partial summary judgment. Tenant asserts that Landlord is simply wrong as a matter of lease/contract interpretation and that the lease contains mutual indemnification obligations by which Landlord is required to indemnify Tenant of any liability it may have to the Subtenant.

## ANALYSIS

First, we should establish that the lease provides that it is to be governed by Ohio law, a provision this Court is bound to honor. The warehouse, the parties, the lease and the damage are all located in Ohio.

2

Under Ohio law, when interpreting a contract, the Court presumes that the intent of the parties is reflected in the plain language of the contract.[1]  When the language is plain and unambiguous, the court enforces the terms as written.[2]  The Court will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary.[3]

Here, Landlord asks the Court to read only that portion of the lease requiring Tenant to repair elements of the premises, and to ignore the adjoining clause that requires Landlord to replace mechanical systems that require replacement.  Put differently, if we only read the Tenants obligations without reading the Landlord's obligations, the Landlord must prevail.[4]  Ohio law will not permit such contract interpretations, and neither will the Court.  At a minimum, there is a genuine issue of material fact as to whether the mishap with the sprinkler was a "mechanical

---

[1] *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Co.*, 714 N.E.2d 898, 900-01 (Ohio Sup. Ct. 1999); *Mark-it Place Foods, Inc. v. New Plan Excel Realty Tr.*, 804 N.E.2d 979, 992 (Ohio Ct. App. 2004).

[2] *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio Sup. Ct. 2003); *Lang v. Piersol Outdoor Advert. Co.*, 115 N.E.3d 667, 674 (Ohio Ct. App. 2018).

[3] *Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio Sup. Ct. 2008).

[4] Landlord's argument evokes then Vice President Al Gore's quip: "If you look at that seal and close your left eye and hold your head just right, it says, 'President of the United States.'"  The Court cannot read only selected provisions of the lease to reach a desired result. *See* Al Gore, Vice President, Galveston Campaign Speech for 1996 Election (October 31, 1996);  *see also* Kirk Johnson, *On Stump, Gore Shows a New Touch in Connecting With Crowds*, N.Y. Times, Nov. 2, 1996, at Section 1, Page 11.

system" that needed replacement or a simple matter of routine maintenance, ignored by the Tenant.

The mutual indemnification obligations in Section 15 of the lease provide that "Landlord will not be liable for and Tenant will indemnify and hold Landlord harmless from any liability or expense associated with any damage or injury to any person or property (including any person or property of Tenant or any one claiming under Tenant) which arises directly from Tenant's . . . use or occupancy of the Leased Premises."[5]  On the other hand, the Tenant's right to indemnification provides that "Tenant will not be obligated to indemnify Landlord and Landlord will indemnify Tenant as to any liability or expense occasioned by the fault or negligence of Landlord, its agents or employees."[6]

Did the sprinkler's malfunction "arise directly from" the Tenant's use or occupancy?  Or was the sprinkler's malfunction "occasioned by the fault or negligence of Landlord?"  It is easy enough to see the issue that lies ahead, but it does just that: it lies ahead.  Tenant was well aware there was a problem, having called for servicing of the sprinkler on multiple occasions and notifying the Landlord that there was a problem with the sprinkler system.  While a jury could find that the sprinkler is a "mechanical system" whose "replacement" was not tended to in a

---

[5] Def.'s Cross-Mot. Partial Summ. J. Ex. A § 15.
[6] *Id.*

prompt fashion by the Landlord and its failure was the fault of the Landlord, that is a factual question that the parties deserve a day in Court to prove or disprove. The Court is not the fact finder and will not find facts in order to grant judgment for either party. Thus, the indemnification clauses bring the parties no closer to a judgment without trial than the plain language of the maintenance and repair clauses. Barring stipulations or agreements by the parties, a jury will have to decide whether the calamity caused by the sprinkler malfunction was the responsibility of the Landlord or the Tenant under the lease. The path spelled out by the parties' agreement is clear—the facts are not.

## CONCLUSION

The motion of Landlord for summary judgment is **DENIED**. The motion of Tenant for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**


Judge Charles E. Butler

5